UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK SIMER,

         Plaintiff,                   Case No. 2:22-cv-10020

v.                                  Honorable Susan K. DeClercq
                                     United States District Judge

OAKLAND COUNTY et al.,

         Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 47)**

In the early hours of December 29, 2020, Patrick Simer went for a drive after a fight with his fiancé. He planned on drinking in a parking lot and then sleeping off the alcohol in his car. On his way, deputies from the Oakland County Sheriff's Department pulled Simer over for speeding, and soon after they arrested him for drunk driving.

While Simer was being booked at the Oakland County Jail, he stated that he was depressed and had dealt with suicide attempts and ideation in the past, and that the arrest was not helping. As a result, deputies brought Simer to a special unit where he could be observed more closely.

What happened next is disputed. Simer alleges that a group of deputies—Defendants Adam Lowe, Nicholas Talierico, Mark Ganey, and Nicholas Cherry—

aggressively threw him to the ground and stripped all of his clothes off, punching him in the face and kicking his back in the process, leaving him unconscious and naked on the ground. Deputy-Defendants contest this account, claiming that they performed a routine "take-down" to search Simer and ensure he could not be a danger to them or to himself, and that all the force they used was reasonable.

Because Simer has demonstrated that there are genuine issues of material fact as to the circumstances and degree of the force used against him, summary judgment as to the Deputy-Defendants will be denied. By contrast, Simer has failed to point to any evidence suggesting that Defendant Oakland County failed to train or supervise its deputies, and so summary judgment will be granted as to the County.

## I.   BACKGROUND

Patrick Simer was speeding down I-75 when Deputy Kershaw of the Oakland County Sheriff's Office saw him. ECF No. 47-2 at PageID.545. Deputy Kershaw pulled him over and suspected that Simer had been drinking. *Id.* at PageID.545–46. Based on that suspicion, Deputy Kershaw asked Simer to get out of the car and proceeded to conduct a series of field sobriety tests. *Id.* at PageID.565. During these tests, Simer was "playing around and being a funny guy," ECF No. 63-13 at PageID.1028, at one point offering to recite the alphabet in German rather than in English. ECF No. 47-2 at PageID.546. Afterwards, Deputy Kershaw asked Simer if he would consent to a breath test. *Id.* Simer consented, and the breathalyzer recorded

a blood alcohol concentration (BAC) of 0.245.[1] *Id.* Simer then agreed to also get a blood test at McLaren Hospital when Deputy Kershaw requested one. *Id*. The blood test showed a blood alcohol concentration of 0.271. *Id.* at PageID.549.

At this point, Deputy Kershaw determined that he would arrest Simer. Having joined Deputy Kershaw at the traffic stop and accompanying him and Simer to the hospital, Deputy Simpson drove Simer to the Oakland County Jail after the blood test. ECF No. 63-12 at PageID.1017–18. At the jail, "two or three" deputies assisted Deputy Simpson in escorting Simer to booking, and Deputy Simpson claimed he did not remember Simer being especially difficult in the squad car on the way. *Id.* at PageID.1021. However, Deputy Simpson did advise the deputies who came to transport Simer that between the initial arrest and their arrival at the jail, Simer had slipped his handcuffs from behind his back to his front, which could be a potential safety hazard. *Id.* Simer admits he slipped his cuffs and testified that the deputies "seemed to be very okay with me" so he did not ask either of them for permission before doing so. ECF No. 63-2 at PageID.941.

Upon arriving at the jail, a deputy took Simer's cell phone, escorted him into the building, and took him to the booking window. *Id.* Simer was also searched while being booked. ECF No. 63-34 at PageID.1060 (Plaintiff's exhibit GG, 00:15-01:03).

---

[1] For context, the legal limit for BAC in the state of Michigan is 0.08. MICH. COMP. LAWS § 257.625(1)(b).

During the booking process, Simer suggested to the deputies that he was depressed and potentially suicidal. ECF No. 63-2 at PageID.941. Because the deputies believed he could be suicidal, they brought Simer straight to the jail's detoxification unit (DTU). ECF No. 63-3 at PageID.953.

Once Simer was taken to the DTU, the Parties' accounts of the facts significantly diverge. Despite there being security footage of Simer's every second in the Oakland County Jail, none of it includes sound. Further, the footage is far from clear: Simer and the deputies are all masked for most of the interaction, the resolution on the video is fairly low, and the Parties are often obscured behind the DTU's physical structures or facing away from the camera. Essentially, the footage says little about what happened in the DTU. Therefore, the following facts primarily come from the depositions and reports attached to the motion for summary judgment and response. ECF Nos. 47; 63.

According to Deputy-Defendants, Simer began acting uncooperatively, clenching his fists repeatedly in a way that they claim was "pre-assaultive." ECF No. 47-2 at PageID.541. Simer made comments suggesting he was looking for a fight. ECF No. 47-5 at PageID.572. The Deputies, only wanting to conduct a strip search to ensure Simer would not be a risk to himself or others, went "hands on" and proceeded to "assist" Simer to the ground. ECF 47-1 at PageID.541. Defendant Deputy Lowe testified that he made the decision to go hands on, and that he held

- 4 -

Simer's head as they brought him down to ensure he did not get hurt. ECF No. 47-5 at PageID.578, 580. Defendant Deputy Talierico testified that he held Simer's arm. ECF No. 47-6 at PageID.585. Defendant Deputy Cherry testified that he held Simer's other arm. ECF No. 47-8 at Page.ID594. Defendant Deputy Ganey testified that he held Simer's legs. ECF No. 47-9 at PageID.597. Each testified that they did not hit, kick, or knee Simer while bringing him to the ground, removing his clothing, or searching him. ECF Nos. 63-3 at PageID.958; 63-4 at PageID.968–69; 63-5 at PageID.976–77; 63-6 at PageID.982.

According to Simer, he entered the cell with his hands raised, and the deputies began yelling at him to remove his clothes. ECF No. 63-2 at PageID.941. He did not immediately do so but asked how he should remove his clothes while handcuffed. *Id.* Because he was anxious, he began clenching his fists and squeezing his hands together as a stress-management technique. *Id.* When the deputies asked Simer if he was refusing to comply, he said "absolutely not." *Id.* at PageID.942. Before he was taken to the ground, the last deputy "came in mumbling . . . about how [Simer] was going to be an issue [and that] this is why [the deputy] comes to work because he wanted me to be a problem and he was ready to fight me." *Id.* Simer testified, "Next thing I know I got punched in the head. They took me down." *Id.*

Simer claims the deputies, after taking him to the ground, jumped on top of him and stripped him, and that he was knocked unconscious because he could not

breathe. *Id.* at PageID.942–43. Photos taken after the incident, including his mugshot, show Simer with a black eye. ECF Nos. 63-16 at PageID.1040; 63-17 at PageID.1042. Another photo shows bruising on his back. ECF No. 63-17 at PageID.1043. Simer suggests he received both injuries from the deputies. ECF No. 63 at PageID.903–04. Defendants dispute this, noting that Deputies Simpson and Kershaw both reported seeing redness and scratches on Simer's face at the time of arrest. ECF Nos. 47-2 at PageID.5476–48; 47-3 at PageID.560–61; 47-4 at PageID.564.

Based on this incident, Simer brought suit under 42 U.S.C. § 1983 for violations of his Fourteenth Amendment rights "to be free from the use of excessive force" while he was a pretrial detainee. ECF No. 1 at PageID.4. He named as defendants Oakland County, as well as the four deputies that primarily participated in the jail incident—Deputies Lowe, Talierico, Ganey, and Cherry. ECF No. 1. On June 19, 2023, Defendants moved for summary judgment, arguing that the claims against both the county and the Deputy-Defendants fail as a matter of law, and that the claims against the Deputy-Defendants are barred by qualified immunity. ECF No. 47.

However, as explained below, summary judgment is improper as to the Deputy-Defendants because Simer has demonstrated a genuine issue of material fact as to the amount and nature of force used on him. Further, qualified immunity is

- 6 -

improper because the determination hinges on these unresolved fact questions. However, Defendants are correct that Simer has failed to demonstrate a genuine issue of material fact as to Oakland County's liability, and so the claim against the County will be dismissed.

## II. STANDARD OF REVIEW

To prevail on summary judgment, movants must identify record evidence showing that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(a). If so, then the burden shifts to the nonmovant to identify specific facts that create "a genuine issue for trial," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted), which requires more than a mere "scintilla of evidence," *id.* at 251, and more than "metaphysical doubt," *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. All inferences must be reasonable, logical, and drawn in the nonmovant's favor to determine whether any party must prevail as a matter of law. *See id.* at 251–52.

## II. ANALYSIS

Defendants request summary judgment for three reasons: (1) the evidence shows that any force used by the Deputy-Defendants was reasonable; (2) Deputy-

Defendants are entitled to qualified immunity; (3) and Simer's *Monell* claim is unsupported by the evidence.

## A. Excessive-Force Claim

*Deputy Lowe.* First, Defendants argue that Deputy Lowe's use of force was reasonable and thus did not violate the Fourteenth Amendment. ECF No. 47 at PageID.515. They claim that Deputy Lowe made the decision "to perform a controlled take down of Plaintiff" based on Simer's "pre-assaultive indicators including clenching his fists." *Id.* Simer, however, disputes the amount of force used against him and his behavior towards the deputies. In his deposition, Simer testified that although he was clenching his fists as a tension-relieving strategy, he was "absolutely not" refusing to cooperate and did not say anything to suggest he wanted to fight the deputies. ECF No. 63-2 at PageID.942. It is undisputed, however, that Simer's hands were in handcuffs in front of his body at the time. ECF Nos. 47 at PageID.508; 63 at PageID.901.

The security footage of the incident does not clear up these different accounts, especially due to the lack of audio and the partially obscured view of the interaction. *See* ECF Nos. 47-7 (Defendants' Exhibit I); 63-46 (Plaintiff's Exhibit SS). All the footage shows is Simer entering the cell with his hands in the air [00:02] and talking with the deputies for two minutes before they bring him to the ground. [02:07]. Although the Defendants argue that the video proves that Deputy Lowe's force was

reasonable, ECF No. 47 at PageID.516, they are incorrect. It is not clear from the video whether Simer's conduct justified the force used, and the Defendants point to no authority suggesting that clenched fists are a "pre-assaultive indicator" that, alone, warrant a use of force. Given the conflicting testimony and the wide room for interpretation of the security footage, summary judgment is inappropriate as to the claim against Deputy Lowe.

*Deputies Talierico, Cherry, and Ganey*. Second, Defendants Talierico, Cherry, and Ganey argue they are entitled to summary judgment because Simer "cannot show that any force was used" by them. ECF No. 47 at PageID.516. However, they are plainly incorrect. If anything is clear from the evidence, it is that each of these defendants used some type of force against Simer. Defendants themselves concede that "Defendants Talierico and Cherry simply secured Plaintiff's arms as he was taken to the floor. Similarly, Defendant Ganey simply secured Plaintiff's legs." *Id.* And Defendant Talierico admitted to using force against Simer: "my force was very minimal. I just maintained . . . control of an arm." ECF No. 47-6 at PageID.585. Defendant Cherry testified that he "assisted [Simer] to the floor by holding him." ECF No. 47-8 at PageID.594. Defendant Ganey testified that he put his hands on Simer: "I secured his legs." ECF No. 47-9 at PageID.597.

To be sure, Defendants may dispute whether their actions constitute an *unreasonable* use of force, but that is ultimately a jury question. *See Wright v. City*

*of Euclid, Ohio*, 962 F.3d 852, 866 (6th Cir. 2020) (denying summary judgment where genuine factual disputes existed as to the reasonableness of the force used by officers, holding that "a jury must determine whether [the force used] was constitutionally excessive."). The Court may not simply accept Defendants' version of the facts—especially when Simer has presented evidence creating a genuine issue for trial as to the amount and nature of force used against him.

As to the amount and nature of the force, Simer testified that he was punched in the side of the head, ECF No. 63-2 at PageID.942, and that the deputies all jumped on top of him, *id.*, ripped his clothes off, *id.* at PageID.943, and ultimately left him unconscious on the ground. *Id.* Simer's testimony, as well as the photos he presented of his black eye and bruising on his back after the incident, ECF Nos. 63-16 at PageID.1040; 63-17 at PageID.1042–43, is enough to create a genuine issue of material fact on this question.

Reasonable jurors could also disagree about whether Simer's conduct right before the takedown justified the use of force in the first place. Specifically, Simer testified, "I don't believe [the deputy] ever asked me to stop clenching my fists. He was more barking demands at me to take my clothes off." ECF No. 63-2 at PageID.941. When asked how he responded, Simer testified that he asked the deputies, "How would you like me to do this while I'm handcuffed?" *Id.* He further testified that he clearly told the deputies he was not refusing to comply. *Id.* at

PageID.942. When Simer testified that a deputy came into the DTU making comments that made him nervous, Simer "asked the officers if we could please get that individual out of the room because he wanted to hurt me. He wanted to go. He wanted it to get dirty. I had no intentions on getting dirty." *Id.* Beyond Simer's claim that he was clenching his hands in an effort to reduce stress, not in preparation to fight, his testimony contradicts that of Defendants' that Simer was acting threatening and resisting. This too raises a genuine issue of material fact as to whether *any* force would have been reasonable under the circumstances.

Because there are genuine issues of material fact as to both Simer's pre-takedown conduct and the amount and nature of the force used against him, summary judgment is inappropriate and will be denied.

### B. Qualified Immunity

The Deputy-Defendants also argue that they are entitled to qualified immunity as to Simer's excessive-force claim. ECF No. 47 at PageID.517–21. Qualified immunity prevents liability for government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Whether an official is entitled to qualified immunity depends on a two-pronged inquiry. "First a court must decide whether the facts the plaintiff has alleged

or shown make up a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Second, "the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Id.* The steps may be addressed in any order. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).

A right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Although an earlier case need not have resolved the exact issue, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Here is where courts must narrow in on the specific circumstances under which the claim arose. *al-Kidd*, 563 U.S. at 742 ("We have repeatedly told courts…not to define clearly established law at a high level of generality.").

Although "entitlement to qualified immunity is a threshold question to be resolved at the earliest point," *MacIntosh v. Clous*, 69 F.4th 309, 315 (6th Cir. 2023), qualified immunity should not be granted where "the legal question of qualified immunity turns upon which version of the facts one accepts. . . . This is especially true considering that the District Court must view the facts in the light most favorable to the plaintiff on a motion for summary judgment." *Sova v. City of Mount Pleasant*,

142 F.3d 898, 903 (6th Cir. 1998) (citations omitted). Specifically, "summary judgment is inappropriate where there are contentious factual disputes over the reasonableness of the use of [] force." *Id.*

*Clearly Established Right.* Here, Defendants argue that they are entitled to qualified immunity because "it was not clearly established as of the date of Plaintiff's incident that a controlled take down could not be performed when Plaintiff (while intoxicated at three times the legal limit) repeatedly clenched his fists and showed pre-assaultive indicators when Deputy Lowe was attempting to explain the process of changing Plaintiff's clothes from his street clothes to a suicide smock." ECF No. 47 at PageID.519. As to Defendants Cherry, Talierico, and Ganey, they argue "it was not clearly established that they could not assist in securing the arms and legs of an individual who was in the process of being taken down by another deputy." *Id.* at PageID.520. By contrast, Simer argues that he had a clearly established right "to be free from the use of force while a handcuffed, compliant, non-resistant inmate inside a jail cell." ECF No. 63 at PageID.918.

Obviously, Simer and Defendants have materially different accounts of the circumstances surrounding the force used. *See* discussion *supra* Part II.A. And those accounts lead to different conclusions about whether the right at issue was clearly established.

- 13 -

If Defendants' account is believed, there is no clearly established right to be free of reasonable force. They claim that "it was appropriate for a law enforcement officer . . . to perform a take down in order to neutralize an individual who was intoxicated and potentially posed a threat to the officers." ECF No. 47 at PageID.519–20. Defendants rely on *Bozung v. Rawson*, in which the Sixth Circuit held that a takedown was reasonable when officers could have believed the plaintiff posed a safety or flight risk. 439 Fed. App'x 513, 520 (6th Cir. 2011). If the Deputy-Defendants' only conduct was carefully bringing Simer to the ground to change his clothes, and Simer seemed to posed a risk to himself and others, *Bozung* may support a finding that the Deputy-Defendants acted reasonably and did not violate any clearly established law.

If Simer's account is believed, he has presented ample case law to suggest that the right as *he* defines it was clearly established. Simer describes himself as "a handcuffed, compliant, and non-resistant inmate," and argues that *Brown v. Lewis* supports his claim that the use of violence against such an individual "has been clearly established as excessive." ECF No. 63 at PageID.918 (quoting 779 F.3d 401, 419 (6th Cir. 2015)). He bolsters this argument with more cases that all generally support the claim that gratuitous force against a handcuffed, subdued detainee is clearly established as unconstitutional. ECF No. 63 at PageID.918–19. If Simer was

compliant, and if a deputy punched him in the head, kicked, or kneed him, then Defendants may have violated a clearly established right.

At this stage, the facts must be viewed in the light most favorable to Simer as the nonmoving party, so for the purposes of this motion, this Court credits Simer's version of events. Accordingly, there is a clearly established Fourteenth Amendment right for a handcuffed, compliant pretrial detainee to be free from the excessive use of force. *See* Brown, 779 F.3d at 419; *see also Harris v. City of Circleville*, 583 F.3d 356, 367 (6th Cir. 2009) ("there undoubtedly is a clearly established legal norm precluding the use of violent physical force against a criminal suspect who already has been subdued and does not present a danger to himself or others"); *Bultema v. Benzie Cnty.*, 146 F. App'x 28, 35–36 (6th Cir. 2005) (unpublished) (holding both that "[it] is well established in this circuit that the gratuitous use of force on a suspect who has already been subdued and placed in handcuffs is unconstitutional" and that "[i]t is beyond doubt that the act of a police officer hitting a restrained suspect in the head is excessive force").

*Constitutional Violation.* As for this prong, whether Defendants violated Simer's constitutional right to be free from excessive force boils down to a series of critical fact questions: Was Simer uncooperative? Was Simer threatening to start a fight? Was Simer acting in a way that *suggested* he wanted to start a fight? Or was he just asking for clarification? Was he just overwhelmed but trying to comply? As

- 15 -

for the force used, did the deputies assist Simer to the ground and take precautions to keep him safe in the process? Did they merely hold his head, arms, and legs to prevent anyone, including Simer, from getting hurt? Or did one of the deputies punch Simer in the head? Did they kick him or kneel on his back? Was he pushed down so hard he could not breathe?

These questions must be resolved by a jury. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine wh4ether there is a genuine issue for trial'") (quoting *Liberty Lobby*, 477 U.S. at 249). Because the question of whether Defendants' conduct violated the Constitution "turns upon which version of the facts one accepts," qualified immunity is improper at this juncture. *Sova*, 142 F.3d at 903. Accordingly, it will be denied as to the four Deputy-Defendants.

### C. *Monell* Liability

Finally, Defendant Oakland County argues that it should be granted summary judgment because Simer failed to raise a genuine issue of material fact as to the adequacy of the County Sheriff Department's training and supervision of its deputies. ECF No. 47 at PageID.523, 527. Defendants also argue that summary judgment should be granted against the Deputy-Defendants to the extent they are being sued in their "official capacities." *Id.* at PageID.527–28.

A municipality may not be held liable for a constitutional violation committed

by its employees unless the plaintiff shows that a municipal policy or custom caused the injury. *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). To show an illegal policy or custom, plaintiffs must establish any of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Lipman*, 974 F.3d at 747 (6th Cir. 2020) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

Here, Simer alleges liability under the theory of inadequate training or supervision, specifically. ECF No. 1 at PageID.6. Under this theory, "the plaintiff must prove that: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

 Defendants argue that Simer has no evidence to support such a claim. ECF No. 47 at PageID.523. They also provided evidence that the Defendant deputies received significant training on the use of force within the county jail. ECF Nos. 47-10 at PageID.599–600; 47-11 at PageID.602–03; 47-12 at PageID.605–06; 47-13 at

PageID.608–10.

By contrast, Simer fails to offer any specific evidence that the Deputy-Defendants were inadequately trained or supervised. Rather, he simply argues that the Deputy-Defendants' conduct during the incident is itself evidence of the County's lack of training and supervision. In support, Simer first relies on *Ouza v. City of Dearborn Heights*, which held that "a plaintiff can show deliberate indifference based on 'single-incident liability' if the risk of constitutional violation is so obvious or foreseeable that it amounts to deliberate indifference for the city to fail to prepare officers for it." 969 F.3d 265, 287 (6th Cir. 2020). He then relies on *Ellis*,[2] which held that a plaintiff may establish *Monell* liability by demonstrating "failure to provide adequate training in light of foreseeable consequences that could result from a lack of instruction." 455 F.3d at 700–01.

Although these cases seemingly support Simer's argument at first glance, a closer look reveals that they are inapposite here. In *Ouza*, the Sixth Circuit affirmed a denial of summary judgment on a *Monell* claim, but not because the alleged conduct itself evidenced a lack of training. *Ouza*, 969 F.3d at 289. Rather, the *Ouza* plaintiff alleged that the defendants never received *any* training on use of force, handcuffing, or probable cause, nor did they receive performance evaluations or

---

[2] Simer's brief erroneously attributed this quotation to the *Ouza* court. ECF No. 63 at PageID.922.

supervision from the city. *Id.* at 286. Notably, defendants did not offer any evidence disputing these claims. *Id.*

Here, Defendants *have* disputed the claim that they never received any training for situations like the one at issue here, presenting evidence in rebuttal. ECF No. 47 at PageID.524–26. Rather, it is Simer, not Defendants, who has failed to point to any evidence that would support an inadequate-training-or-supervision claim. As such, *Ouza* does not control here.

Even if the Deputy-Defendants received inadequate training or supervision, Simer has failed to show that Oakland County's failure amounted to deliberate indifference. *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 2002) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989)). In the second case that Simer relies on, *Ellis*, the Sixth Circuit upheld a judgment as a matter of law against a plaintiff who claimed municipal liability under an inadequate training or supervision theory. 455 F.3d 690, 700. The court foreclosed the argument that a single incident is enough to establish deliberate indifference, specifically holding that the plaintiff had not presented sufficient evidence *of other incidents of abuse* that would prove deliberate indifference. *Id.*

Following *Ellis's* reasoning, no reasonable jury could find deliberate indifference solely based on evidence of a single incident that allegedly arose from

the lack of training.[3] Because Simer has failed to point to any evidence of inadequate training or supervision beyond his own experience with the deputies, he has not raised a genuine issue of material fact that would allow his *Monell* claim to survive summary judgment. As such, his *Monell* claim—and his excessive-force claim, to the extent he brings it against the Deputy-Defendants in their official capacities—must be dismissed.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 47, is **GRANTED IN PART AND DENIED IN PART** as follows:

1. Defendants' Motion for Summary Judgment is **DENIED** as to Defendants Lowe, Talierico, Cherry, and Ganey in their individual capacities.

2. Defendants' Motion for Summary Judgment is **GRANTED** as to Defendants Lowe, Talierico, Cherry, and Ganey in their official capacities.

3. Defendants' Motion for Summary Judgment is **GRANTED** as to Defendant Oakland County.

---

[3] The *Ellis* court held that no reasonable jury could find deliberate indifference based on evidence that *two* prior incidents of similar abuse had also occurred, and no updates to training or supervision were made. 455 F.3d at 701.

Further, it is **ORDERED** that the Complaint, ECF No. 1, is **DISMISSED**

**WITH PREJUDICE** as to Defendant Oakland County and as to Defendants Lowe,

Talierico, Cherry, and Ganey in their official capacities.

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated:  9/18/2024